# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JEREMY JOHNSON, # 437-631,
SID # 4099672,

Plaintiff

v.                                       Civil Action No. CCB-19-157

C.O. II BANKARD,
C.O. II TYLER,
C.O. II WARD,[1]

Defendants

\*\*\*

## MEMORANDUM OPINION

Plaintiff Jeremy Johnson, a Maryland prisoner, filed an action under 42 U.S.C. § 1983 seeking money damages against Eastern Correctional Institution ("ECI") Correctional Officers Bankard and Tyler for an assault alleged to have occurred on the afternoon of August 4, 2018. (ECF 1, pp. 3–4).[2] Defendants Bankard and Tyler move to dismiss or alternatively for summary judgment in their favor, arguing that Johnson failed to exhaust administrative remedies and that Johnson cannot factually support his claims.[3] (ECF 15). The pending motion may be decided without a hearing. *See* Local Rule 105.6 (D. Md. 2018). For reasons that follow, the Motion to Dismiss or for Summary Judgment is GRANTED and the Complaint is DISMISSED without prejudice for failure to exhaust administrative remedies.

---

[1] The Maryland Attorney General did not accept service on behalf of a person identified as CO II Ward, because a person by this name was not employed as a correctional officer at ECI during the relevant time. (ECF 10).

[2] Cited page numbers correspond to the numbers assigned by CM/ECF rather than internal pagination.

[3] On July 3, 2019, as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk notified Johnson that the defendants filed a dispositive motion. (ECF 16). Johnson was informed of his right to file a timely written response and of the possibility that if he failed to respond, the case could be dismissed, or a judgment entered against him, without further notice. *Id.*

## Background

The record evidence, construed in the light most favorable to Johnson, chronicles the following events. On January 15, 2019, Johnson filed a complaint against Tyler, Bankard, and Ward, alleging an assault committed while Johnson was incarcerated at ECI. The allegations were investigated by Detective Sergeant Justice of the Department of Public Safety and Correctional Services ("DPSCS") Intelligence and Investigative Division ("IID"). (ECF 15-2, IID Report and Declaration of Nicole Miraglia). The report reiterates Johnson's allegation that he was escorted by Tyler and Bankard into a hallway on HU #4. (*Id.*, p. 6). While under escort, the officers beat Johnson without reason and repeatedly rammed his head against a wall. (*Id.*). The investigator noted that at the time of the interview Johnson showed no visible sign of injury. (*Id.*). The "view-only" video camera in the hallway was aimed toward the back door and did not show the alleged incident. (*Id.*).

On August 4, 2018, medical documentation by Nurse Sarah Johnson indicated Johnson showed no visible signs of injury. (*Id.*, p. 7). On August 5, 2018, Nurse Elizabeth Miller noted that Johnson was admitted to the Administrative Segregation Observation Area overnight, where she observed him. (*Id.*). Nurse Miller observed that Johnson did not cooperate with the officers and repeatedly pulled away. (*Id.*). The only signs of injury were bilateral bruising and a circular abrasion on the left wrist and some swelling of the right knee. (*Id.*). Johnson claims his initial grievance concerning the event was dismissed. (ECF 1, p. 3).

## Standard of Review

In addressing the pending motion, the court will consider documents beyond those intrinsic to Johnson's Complaint. Consequently, the defendants' Motion is treated as one for summary judgment. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment

2

shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original). The court must view the evidence in the light most favorable to the non-movant and draw all inferences in his favor, without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). It is the court's obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526.

The defendants have attached to their motion records, declarations, and verified correctional records. Because the Complaint is not verified, the court cannot consider the factual allegations raised by Johnson in determining the propriety of summary judgment. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft

of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).[4]

**Analysis**

The defendants raise the affirmative defense that Johnson has failed to exhaust his administrative remedies. They correctly state that if Johnson's claims have not been properly presented through the administrative remedy procedure, the claims must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[5] Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner; rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). A claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 219–20. In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (citing *Miller v.*

---

[4] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

[5] Prison conditions encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

*French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Moore*, 517 F.3d at 725 (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

DPSCS's grievance system for "inmate complaint resolution" is set forth at Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction[.]" C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 *et seq.* When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the Inmate Grievance Office ("IGO"). The ARP process consists of multiple steps. For the first step, a

5

prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If the Commissioner fails to respond, the grievant shall file any appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a)(i)–(iv). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland

Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

The purpose of the exhaustion requirement includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore*, 517 F.3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

It is clear from the uncontested record evidence that Johnson did not pursue his claim of assault through the entire administrative process. Exhaustion of administrative remedies requires *proper* exhaustion. Here, Johnson abandoned the process prematurely and admits he did not follow through beyond submitting an ARP to the Warden. There is no record he ever presented his claim to the IGO for its consideration. (ECF 15-5, Records Declaration of Samiyah G. Hassan,

¶ 2). He has therefore failed to properly exhaust administrative remedies, thwarting the purpose of administrative exhaustion.

## Conclusion

For this reason, the Complaint against Defendants Bankard and Tyler must be dismissed without prejudice for failure to exhaust administrative remedies regarding the claims raised against them. A separate Order follows.

11/13/19
Date

Catherine C. Blake
United States District Judge